UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Richard A. McMenamon II</u>[1]

    v.                                             Case No. 21-cv-479-PB

<u>New Hampshire Dep't of Health</u>
<u>and Human Services Commissioner</u>
<u>Lori Shibenette et al.</u>[2]

**REPORT AND RECOMMENDATION**

Richard A. McMenamon, proceeding in forma pauperis and without an attorney, has filed an Amended Complaint (Doc. No. 6), seeking injunctive and monetary relief, for purported failures by state authorities to investigate and enforce federal and state child protection laws.  He also seeks damages from

---

[1] McMenamon does not include his children as plaintiffs in the caption of this case, but identifies them as parties to this case in the complaint narrative.  Doc. No. 1, at 3-4 ¶¶14-15. As a self-represented non-attorney, McMenamon may not litigate claims on behalf of anyone but himself, including his minor children.  See <u>28 U.S.C. § 1654</u>; LR 83.2(d) ("Persons who are not members of the bar . . . will be allowed to appear before this court only on their own behalf.").  Accordingly, the Court has construed this action as having been brought by the plaintiff on his own behalf, asserting only rights accruing to him personally.

[2] McMenamon names the following persons as defendants: N.H. Department of Health and Human Services ("DHHS") Commissioner Lori Shibenette (in her official capacity), Division for Children, Youth, and Families ("DCYF") Director Joseph Ribsam (in his official capacity), and DHHS employee Eileen Rispoli a/k/a/ Eileen Lofton Rispoli.  As discussed below, the Court liberally construes McMenamon's complaint as also asserting claims against Shibenette and Ribsam in their individual capacities.

Eileen Rispoli — the mother of his children and an employee of the N.H. Department of Health and Human Services ("DHHS") – for intentional and negligent infliction of emotional distress. His amended complaint (Doc. No. 5-1) is before the court for preliminary review pursuant to 28 U.S.C. § 1915(e)(2) and LR 4.3(d)(2).

## Preliminary Review Standard

The court reviews cases filed by plaintiffs proceeding without an attorney to determine, among other things, whether the court lacks subject matter jurisdiction and whether the complaint fails to state a claim. See 28 U.S.C. § 1915(e)(2); LR 4.3(d)(2). In determining whether a pro se plaintiff has stated a claim that is plausible on its face, the court construes the allegations in the complaint liberally, takes as true all well-pled factual allegations, and construes all reasonable inferences in the plaintiff's favor. Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102–03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The court may dismiss a pro se litigant's claims on its own accord if it lacks jurisdiction, a defendant is immune from the relief sought, the action is malicious or frivolous, or the complaint fails to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(e)(2); LR 4.3(d)(2)(A).

## **Background**

The following draws from McMenamon's filings, restating the pertinent non-conclusory factual allegations in his complaint and the submitted documents referenced therein. See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019).

**A.   Alleged neglect, violence, and abuse of minor children**

Richard McMenamon is the father of two minor children, M.M. (born in 2013) and V.M. (born in 2016), over whom he shares joint custody with Rispoli.  Am. Compl. (Doc. No. 5-1, ¶¶ 13-15).  In 2012, Rispoli moved into McMenamon's home in Gilmanton Iron Works, New Hampshire, and resided there with McMenamon, M.M., and V.M. until the end of her and McMenamon's relationship in June 2019.  Id. ¶¶ 18, 20, 38.

McMenamon alleges that, beginning in 2014, he began to notice a pattern of neglect, abuse, and violence towards his children when they were in Rispoli's care.  Id.  In 2014, for example, he allegedly took an infant M.M. to his primary care physician after finding M.M. to be lethargic and unresponsive when McMenamon returned from work.  Id.  McMenamon asserts that, after extensive "Brain Scan" testing, M.M.'s primary care physician found that M.M. was being underfed.  Id.  McMenamon also claims that, in 2016, after V.M. was born, Rispoli became violent with V.M. and separately attacked M.M., leaving him with "gouge marks" and "red marks" on his face and neck.  Id. ¶ 22.

After each of these incidents, McMenamon allegedly "curbed his work schedule" to protect M.M. and V.M. and to "limit[]" Rispoli's time alone with them.  Id.

McMenamon alleges that, in response to what he viewed as Rispoli's increasingly dangerous, despondent, and abusive behavior, he reported Rispoli to several professionals, including a mental health therapist, Rispoli's clinical psychologist, and an urgent care doctor, but received no help.  Id. ¶¶ 23-27.  Additionally, he made reports of child abuse to the DHHS Division for Children, Youth and Families ("DCYF"), and the Gilmanton, New Hampshire police, neither of which found McMenamon's reports to be substantiable.  Id. ¶¶ 27-28.

In June 2019, DHHS (Family Services) hired Rispoli as an employee.  Id. ¶ 29.  At around this time, Rispoli's daughter from her previous marriage moved into McMenamon and Rispoli's home, over McMenamon's objections, to care for the children while Rispoli worked.  Id. ¶ 30.  Thereafter, McMenamon reported Rispoli's daughter to DCYF for picking M.M. up and throwing him "head-first into a wooden framed sofa" – the "same type" of "assault" that McMenamon had allegedly witnessed numerous times by Rispoli.  Id. ¶ 30.  McMenamon alleges that he received no help and was instead threatened by DCYF that he himself could be "charged" if he gave Rispoli's daughter further access to the children and they suffered serious injury in Rispoli's

4

daughter's care. Id. He further asserts that, in June 2019, he stopped all employment to care for and protect his children while Rispoli worked full-time at DHHS. Id. ¶ 31.

McMenamon additionally claims that, from early 2019 until April 2021, Rispoli engaged in what he views to be inappropriate masturbatory conduct while breastfeeding V.M., who was three to four-years old at the time. Id. ¶ 32. McMenamon allegedly reported the "inappropriate sexual relationship" to the New Hampshire State Police, the Gilmanton Police, and DCYF, but none of these entities ultimately intervened. Id. Also in 2019, McMenamon also allegedly reported Rispoli to the Gilmanton Police and DCYF for threatening him and "throwing knives inside their residence within striking distance of the children." Id. ¶ 34. McMenamon alleges that the Gilmanton Police informed him that he could be arrested and removed from the property if he physically attempted to stop Rispoli. Id. ¶ 36. Additionally, he states that Gilmanton Police warned him that he could be charged with "wiretapping" if he "audibly recorded . . . Rispoli engaging in a [purported] sexual act with V.M." Id. ¶ 36.

McMenamon claims that the alleged abuse described above has persisted after Rispoli moved into a separate home in June 2019 because Rispoli "has an entirely unsupervised weekly custody time with M.M. and V.M." Id. ¶ 38. He reveals later in his

5

complaint that his and Rispoli's relationship is the subject of an ongoing custody proceeding.  Id. ¶ 46.

**B.   Denied DDHS, SNAP, and Medicaid Benefits**

McMenamon claims that, unbeknownst to him, on or about August 2019, DHHS designated him as a "non-parental unit," which he asserts is a "term designated for a parent who has given their children up."  Id. ¶ 39.  McMenamon alleges that, as a result of this designation, he was denied access to all federal programs for which his children were entitled, including Medicaid, nearly $500 each month from the Supplemental Nutrition Assistance Program ("SNAP"), and free school meals and milk through other federal programs.  Id. ¶ 39.  Additionally, he states that he was not authorized to speak to his children's physicians, nurses, or billing personnel, and had no access to prescription coverage for his children's medical needs.  Id.  McMenamon alleges that, during this period, he was continually billed for medical visits and prescription medications for his children and paid for his children's breakfast and lunch meals out of pocket.  Id.  He further claims that his own Medicaid insurance was cancelled for some period, he was unable to pay medical bills, and that medical providers sent their unpaid bills out for collection, adversely affecting his credit.

McMenamon additionally alleges that, from about September 2019 to September 2020, DHHS and DCYF's records falsely recorded

6

Rispoli as the primary caregiver and only parent for M.M. and V.M., and incorrectly listed that the children were only living with Rispoli.  Id. ¶ 40.  McMenamon states that, during this time, he put aside his work as an independent contractor to care for his children full time and that the children primarily lived with him.  Id.  He further claims that, during this same period, Rispoli received monthly food benefits under SNAP, which she used for her own benefit, as well as Medicaid benefits, even though she was employed full time by DHHS.  Id.

McMenamon claims that he was not provided statutorily required notice that his rights as the primary caregiving parent had been terminated, and that DHHS did not provide him with a statutorily required hearing before depriving him of those rights.  Id. ¶ 56.  Although McMenamon concedes that his federal benefits have since been restored by DHHS, he contends that DHHS did so as part of a cover up of what McMenamon alleges was Medicaid fraud and violations of his due process rights.  Id. ¶ 57.  Additionally, he reports that his appeal to DHHS "had been withdrawn" even though he did not withdraw that appeal and no hearing has taken place.  Id.

McMenamon "alleges on information and belief" that other DHHS and DCFY employees assisted Rispoli in this purported Medicaid fraud.  Id. ¶ 41.  Additionally, he alleges that Rispoli "masterminded" the falsification of records in concert

7

with other DHHS officials.  Id. ¶ 59.  To support these allegations, McMenamon claims that, in 2020, an unnamed DHHS (Family Services) supervisor told him that altered legal documents, signed and submitted by McMenamon, declared that his children were living with Rispoli, and that this forged document was the basis for the "Non-Parental Unit" designation and McMenamon's loss of benefits.[3]  Id. ¶ 55.  McMenamon further alleges that a DHHS supervisor informed him that Rispoli could not have altered the document on her own.  Id. ¶ 56.  McMenamon maintains that DHHS has done nothing to Rispoli or any DHHS employee in the face of the alleged misconduct summarized herein.  Id.

### C. Alleged Deliberate Indifference by New Hampshire State Entities to Reports of Abuse

McMenamon claims that DHHS and DCYF have created a hostile environment for the reporting of suspected or actual cases of child abuse, and have exhibited a state-wide deliberate indifference to such reports.  With regard to this case, he alleges that DHHS and DCYF threatened him with the loss of custody of his children, or criminal charges, if McMenamon

---

[3] McMenamon claims that a true and correct copy of the purportedly forged document is attached to his Amended Complaint as Exhibit A.  Id. ¶ 55.  No such document, however, is included among McMenamon's exhibits.  On June 17, 2021, the court issued an endorsed order granting McMenamon leave to submit any missing exhibits before the court completed its preliminary review.  While McMenamon filed renumbered exhibits, these exhibits do not include any new documents bolstering his fraud allegations.

8

reports any further incidents of alleged abuse. Id. ¶ 48. McMenamon alleges that, in doing so, the DHHS, DCYF, and the defendants in particular, are abusing their official positions and are affirmatively creating a danger to children in New Hampshire, including M.M. and V.M. Id. He asserts that the defendants, acting under the color of state law, are depriving him of his right to report the suspected child abuse of his children and to have those reports investigated and documented in accordance with federal and state law. Id. He alleges that out of the many reports of child abuse he has made to "Mandatory Reporters" in the State of New Hampshire, only two were submitted to DCYF.[4] Id. ¶ 53.

Beyond his personal circumstances, McMenamon broadly asserts, without any citation to official documents or reports, that DHHS and DCYF, in conjunction with the state family courts, have historically facilitated "murder and horrific sexual violence upon" minors. Id. ¶ 61. He accuses DCYF of sanctioning, by inaction, the "'contemptuous application' of the corporal punishment law in New Hampshire" against minors by designating acts which McMenamon views as "physical attacks upon

---

[4] In his complaint, McMenamon also includes a "partial list of individuals who are 'MANDATORY REPORTERS . . . who became aware of facts and circumstances indicating actual or suspected child abuse [of] M.M. and V.M., but failed to report under the law because of the deliberate indifference by state agencies responsible for investigating and preventing child abuse." Id. ¶ 49.

9

children" as permissible "discipline," "punishment[]," or "parenting."  Id. ¶¶ 62, 66.  He further critiques DCYF and the Gilmanton Police's definition of what constitutes "sexual relations" with a minor or "sexual abuse" on a minor, which are incongruent with McMenamon's personal beliefs and his interpretation of how those terms are defined and construed under state and federal law.

**D.   McMenamon's claims**

In his complaint, McMenamon asserts four causes of action.  The court liberally construes his allegations as attempting to assert the following claims:

1.  The defendants conspired to commit Medicaid fraud and to deprive McMenamon of Medicaid and federal food assistance without statutorily required due process, in violation of his federal constitutional and statutory rights, by:

    a.  Forging a document identifying McMenamon as a "non-parental unit";

    b.  Depriving McMenamon of notice and an opportunity to be heard prior to the termination of his Medicaid benefits;

    c.  Depriving McMenamon of notice and an opportunity to be heard prior to the termination of his food assistance benefits; and

    d.  Depriving McMenamon of his right to appeal adverse agency decisions by withdrawing his 2020 appeal without his consent.

2.  The defendants failed to enforce, and acted with deliberate indifference to, federal and state child protection laws by:

    a.  Failing to investigate reports of child abuse;

      b.    Allowing excessive use of corporal punishment against children;

      c.    Retaliating against parent reporters of child abuse by using the power and weight of the agency's authority to threaten reporters with the loss of their own parental rights or the loss of their federal benefits; and

      d.    Encouraging state and local police to threaten or retaliate against reporters of child abuse with charges, arrest, or prosecution for reporting child abuse, including sexual abuse of minors.

3.    Rispoli intentionally inflicted emotional distress by:

      a.    Physically threatening McMenamon; and

      b.    Having McMenamon witness physical violence, psychological abuse, and sexual abuse of his children.

4.    Rispoli negligently inflicted emotional distress by:

      a.    Physically threatening McMenamon; and

      b.    Having McMenamon witness physical violence, psychological abuse, and sexual abuse of his children.

Id. at 24-35. As relief, McMenamon requests compensatory damages, punitive damages, interest, costs, and attorneys' fees. Id. at 35-36. He also seeks injunctive relief, as to Count 2, to prevent allegedly ongoing violations of his rights. Id.

## Discussion

McMenamon's complaint identifies multiple causes of action in which he contends the defendants, acting in their individual or official capacities, violated his federal constitutional rights and state law. Liberally construed, McMenamon's allegations attempt to state multiple federal claims for relief

11

under 42 U.S.C. § 1983, which, if correctly pled, would invoke this court's federal question jurisdiction, see 28 U.S.C. § 1331, as well as supplemental jurisdiction over his state-law emotional distress claims, and claims that the defendants violated state child protection laws, see id. § 1367.

### A.   Dismissal of monetary claims against the defendants in their official capacities

McMenamon attempts to bring several claims against the defendants in their official capacities in order to obtain monetary relief for past deprivations of federal rights and benefits.  In doing so, he concedes that he is now receiving the benefits he was temporarily denied.  Because the Eleventh Amendment precludes suits for damages against state employees sued in their official capacities, see Davidson v. Howe, 749 F.3d 21, 27-28 (1st Cir. 2014), the district judge should dismiss all claims against the defendants in their official capacity, to the extent those claims seek monetary relief, and construe McMenamon's allegations as if brought against the defendants in their individual capacities.

### B.   Claims Against Rispoli

In this case, McMenamon has sued Rispoli, who has been involved in the events underlying this action as both a private and a state employee.  To the extent McMenamon asserts violation of his federal constitutional and/or statutory rights under

12

§ 1983 in Claims 1 and 2 above, those claims can only proceed against Rispoli to the extent that her actions were taken "under color of state law," which appear to include McMenamon's allegations concerning Rispoli's actions after she was employed by DHHS.  See Doe v. Harvard Univ., 462 F. Supp. 3d 51, 62-63 (D. Mass. 2020) ("For [a d]efendant to have acted under color of state law, their actions must be fairly attributable to the State." (internal quotation marks and citations omitted)).  Claims 3 and 4, which arise under state law, can be asserted against Rispoli as a private actor.

**C.   Deprivation of Medicaid and federal food assistance benefits without statutorily required procedural due process**

In Count 1 of the complaint, McMenamon claims that, from approximately September 2019 to September 2020, as a result of the purportedly fraudulent acts by the defendants (described above), he was deprived access to federal Medicaid and food assistance benefits for his children without having first received statutorily required due process.  McMenamon alleges that the defendants committed these purportedly fraudulent acts while acting under state law, invoking a private right of action under 42 U.S.C. § 1983.

"Section 1983 supplies a private right of action against a person who, under color of state law, deprives another of 'any rights, privileges, or immunities secured by the Constitution

13

and [federal] laws.'" Gray v. Cummings, 917 F.3d 1, 7-8 (1st Cir. 2019) (quoting 42 U.S.C. § 1983). To satisfy the statute's "injury" requirement, the plaintiff must show a deprivation of a federally secured right. Farrar v. Hobby, 506 U.S. 103, 112 (1992).

McMenamon contends that, under several federal regulations, the defendants were required to provide him notice and a hearing before depriving him of federal benefits such as Medicaid and food assistance. For example, McMenamon argues that, pursuant to 42 C.F.R. § 431.211, the defendants were required to send him a notice at least 10 days before taking certain actions, including terminating existing Medicaid benefits and, pursuant to 42 C.F.R. § 431.220, were required to grant him a hearing before making such changes. He cites similar federal regulations regarding the procedural due process owed to him before being deprived of federal food assistance benefits. McMenamon alleges that, instead of providing notice and a hearing, the defendants, acting under state law, forged a document identifying him as a "non-parental unit."

These allegations, taken as true in this procedural posture, arguably suffice to state a claim upon which relief can be granted. In an Order issued simultaneously with this R&R ("Simultaneous Order"), the court directs service of McMenamon's

due process claims (Claims 1(a)-(d)) on the defendants in their individual capacities.

To the extent McMenamon also seeks to assert an independent claim of "Medicaid fraud," however, the District Judge should dismiss such claim because neither federal nor New Hampshire state law provides a private cause of action for "Medicaid fraud."[5] See, e.g., Millennium Labs., Inc. v. Universal Oral Fluid Labs., LLC, No. 8:11-cv-1757-MSS-TBM, 2012 WL 12905083, at *3, 2012 U.S. Dist. LEXIS 191035, at *17 (M.D. Fla. Apr. 25, 2012) (explaining that federal health care fraud statutes provide no private right of action); Rzayeva v. United States, 492 F. Supp. 2d 60, 78–79 (D. Conn. 2007) (dismissing healthcare fraud claims because there is no private cause of action for Medicare and Medicaid fraud); 31 U.S.C. § 3721 (false claims against the United States government); N.H. Rev. Stat § 167:61-b (2016) (false claims against NHDHHS).

---

[5] A private individual may assert a qui tam claim on behalf of the federal government under the False Claims Act (FCA), 31 U.S.C. § 3729, et seq., where there has been fraud on the federal government. See Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 771-78 (2000). Pro se litigants like McMenamon, however, cannot bring qui tam claims under the FCA. United States ex rel. Lu v. Trs. of Tufts Coll., No. 19-1381, 2019 WL 9524094, at *1, 2019 U.S. App. LEXIS 39388, at *1 (1st Cir. Dec. 12, 2019); Tavares ex rel. United States, No. 19-266-WES, 2019 WL 12363209, at *1, 2019 U.S. Dist. LEXIS 238462, at *3 (D.R.I. May 24, 2019).

D.   **Enforcement of child protection laws and retaliation**

In Count 2, McMenamon claims he is entitled to damages and injunctive relief under 42 U.S.C. § 1983 for the defendants' purported failures to effectively enforce federal and state child protection laws (Claims 2(a)-(b)).  Liberally construed, his allegations also assert a § 1983 First Amendment claim for monetary relief alleging that the defendants retaliated against him for reporting alleged child abuse to state authorities (Claims 2(c)-(d)).

With respect to McMenamon's former claims (Claims 2(a)-(b)), McMenamon has failed to state a claim upon which relief can be granted.  Although § 1983 provides a basis to enforce rights protected by a federal statute, it does not provide a basis for the general commencement of lawsuits to enforce violations of federal law.  Gonzaga Univ. v. Doe, 536 U.S. 273, 282 (2002).  In order to be actionable under § 1983, the federal statute the plaintiff seeks to enforce must confer "specific, individually enforceable rights" upon the person who seeks to enforce the statute and evidence an intent that these rights can be privately enforced.  Id. at 279-285.

The federal child abuse prevention and reporting statues McMenamon seeks to enforce, however, confer no specific individually enforceable rights on private plaintiffs.  The Child Abuse Prevention and Treatment Act ("CAPTA"), 42 U.S.C. §§ 5101–5106a, for example, is a "federal funding statute enacted

16

pursuant to Congress's spending power," Eric L. ex rel. Schierberl v. Bird, 848 F. Supp. 303, 312 (D.N.H. 1994), which "conditions state grants for child abuse and neglect prevention and treatment programs on the requirement that states investigate abuse and neglect reports promptly and take action to protect the child upon a finding of abuse," Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 901 (7th Cir. 1997). Neither CAPTA nor its implementing regulations "mandate a particular means of investigation or state what types of actions" state defendants must take "to protect abused or neglected children." Tony L. ex rel. Simpson v. Childers, 71 F.3d 1182, 1189 (6th Cir. 1995). As such, "the federal courts of appeal that have considered" failure-to-report and failure-to-resolve child-abuse allegations "have uniformly rejected arguments that provisions of CAPTA create a private right." Sheetz v. Norwood, 608 F. App'x 401, 403 (7th Cir. 2015) (citing Doe ex rel. Fein v. District of Columbia, 93 F.3d 861, 865-66 (D.C. Cir. 1996); Tony L., 71 F.3d at 1189-90); Eric L., 848 F. Supp. At 313 (finding that CAPTA confers no privately enforceable right under § 1983 to force state actors to "'effectively' enforce" state or federal child abuse protection laws (citation omitted)).

With respect to McMenamon's latter claims, his allegations, liberally construed and taken as true for the purposes of preliminary review, arguably make out a prima facie case of

17

First Amendment retaliation for reporting allegedly criminal activity.  See, e.g., Posey v. Swissvale Borough, No. 2:12-cv-955, 2013 WL 989953, at *6, 2013 U.S. Dist. LEXIS 34415, *22 (W.D. Pa. Mar. 13, 2013) (setting forth elements of § 1983 First Amendment retaliation claim for private citizens filing police reports); cf. McBride v. Vill. of Michiana, 100 F.3d 457, 461 (6th Cir. 1996) ("[R]etaliation by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment."); Fraternal Ord. of Police Hobart Lodge No. 121, Inc. v. City of Hobart, 864 F.2d 551, 553 (7th Cir. 1988) (same).  Accordingly, in the Simultaneous Order, the court directs service of Claims 2(c)-(d) on the defendants in their individual capacities.

**E.   Infliction of emotional distress**

In New Hampshire, "[a] defendant is liable for intentional infliction of emotional distress if he or she, 'by extreme and outrageous conduct, intentionally or recklessly cause[d] severe emotional distress to another.'"  Rand v. Town of Exeter, 976 F. Supp. 2d 65, 76 (D.N.H. 2013) (quoting Tessier v. Rockefeller, 162 N.H. 324, 341 (2011))  "The conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  Id. (quoting Tessier, 162 N.H. at 341).

18

In Counts 3 and 4, McMenamon claims that Rispoli, by (allegedly) declaring McMenamon to be a non-parental unit, and by (allegedly) threatening him and his children with physical, psychological, and sexual violence, intentionally or negligently caused him to suffer extreme emotional distress. He further claims that the emotional distress manifested physically, including extreme weight loss, loss of sleep and physical ailments. Am. Compl. (Doc. No. 5-1, ¶ 111). These allegations, taken as true in this procedural posture, arguably suffice to state a claim upon which relief can be granted. In the Simultaneous Order, the court directs service of McMenamon's infliction of emotional distress claims (Claims 3 and 4) against Rispoli in her individual capacity.

## Conclusion

For the foregoing reasons, the district judge should:

- dismiss all claims for monetary damages against the defendants in their official capacities;

- dismiss Claim 1, to the extent McMenamon asserts a private Medicaid fraud claim; and

- dismiss Claims 2(a)-(b) for failure to state a claim upon which relief might be granted.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file objections within the specified time

waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

                                                    */s/ Andrea K. Johnstone*
                                                    Andrea K. Johnstone
                                                    United States Magistrate Judge

September 8, 2021

cc:  Richard A. McMenamon II, pro se