UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Richard A. McMenamon II**

    v.                                  Case No. 21-cv-479-PB
                                          Opinion No. 2022 DNH 151

**New Hampshire Department of
Health and Human Services
Commissioner Lori Shibinette, et al.**

## MEMORANDUM AND ORDER

Richard McMenamon has sued three state actors, one of whom is also his former romantic partner. He seeks both damages and injunctive relief for alleged violations of federal law pursuant to 42 U.S.C. § 1983. He also asserts state law claims for damages against his former partner in her capacity as a private actor. The defendants have challenged McMenamon's claims in a motion for summary judgment. Because McMenamon lacks standing to seek injunctive relief and fails to present a triable claim for damages under federal law, I grant the defendants' motion with respect to his federal claims. I also decline to exercise supplemental jurisdiction over his state law claims and dismiss those claims without prejudice.

## I.   BACKGROUND

### A.   Factual Background

McMenamon was previously in a long-term relationship with one of the defendants, Eileen Rispoli. Doc. 46-6 at 107. McMenamon and Rispoli have two children together, a nine-year-old and a six-year-old. Id. The couple separated in the summer of 2019, at which point Rispoli moved into her own apartment and began working as a Family Specialist with the New Hampshire Department of Health and Human Services (DHHS). Id. at 110-111. Despite the separation, McMenamon and Rispoli continued to share custody of the children. Doc. 46-2 at 3.

Throughout much of their relationship, McMenamon harbored concerns that Rispoli was abusing their two children. Consequently, since April 2019, McMenamon has filed more than a dozen reports with the Division for Children, Youth, and Families (DCYF) alleging that Rispoli abused one or both children. Id. at 4. All of the reports were either investigated and deemed unfounded or administratively "screened out" because the allegations did not rise to the level of child abuse. Id.; Doc. 38-3 at 2. The present action centers on three events that occurred after McMenamon began filing reports of child abuse.

Sometime in the summer of 2019, following the separation, McMenamon stopped receiving certain federal benefits administered by

DHHS, including federal food assistance under the Supplemental Nutrition Assistance Program (SNAP) and his children's Medicaid health insurance. Doc. 46-8 at 131. While attempting to determine why his benefits were terminated, McMenamon learned that a document in his case file at DHHS had been altered. See id. When applying for benefits, McMenamon submitted a "custody/meals report" to DHHS that showed he had primary custody of the two children. Id. Although he had placed his case number at the top of the document, McMenamon was told by a DHHS representative that the copy on file had Rispoli's case number on the header, thereby indicating that she had primary custody of the children. Id. McMenamon alleges that the document was forged or altered and led to the unwarranted termination of his benefits.

     McMenamon subsequently filed an administrative appeal to challenge DHHS's benefits determination. Id. at 185. He received a letter in September 2020 explaining that, although there was "a short period of time (10 days) that [McMenamon and his children] were not yet open in [his] case," his "benefits were transferred . . . with no break in coverage." Id. The letter went on to state that, because McMenamon's "Appeal Hearing reason ha[d] been resolved," his appeal would be considered withdrawn unless he notified DHHS that he wished to proceed with the appeal. Id. McMenamon acknowledges that his benefits were ultimately restored, but asserts that his appeal was nonetheless withdrawn without his consent. Doc. 5-1 at 20-21.

While adjudicating McMenamon's benefits claim, DHHS became concerned that he may have engaged in welfare fraud and assigned fraud investigator Scot Vinovich to investigate the matter. Doc. 38-4. During the investigation, Vinovich stated to McMenamon, "You better change your attitude," which McMenamon took to be a threat. Doc. 46-5 at 83. Vinovich ultimately determined that McMenamon had not committed welfare fraud. Doc. 38-4.

In April 2020, two Gilmanton police officers arrived at McMenamon's residence. Doc. 46-8 at 147. The police stated that they were sent by DCYF to perform a wellness check on the children and investigate McMenamon's recent reports of abuse, because COVID-19 precautions precluded DCYF from visiting the residence. Id. McMenamon asserts that, shortly after arriving, the police "insinuated that [he] was reporting too much by stating in a questionable tone the amount of events [he] had reported during the prior month." Id. Upon leaving, one of the officers stated "in an aggressive tone" that "DCYF will be [at the residence] in the morning," which McMenamon took to be a threat. Doc. 46-6 at 6. DCYF, however, never showed up. Id.

4

B. **Procedural Background**

McMenamon, proceeding pro se and in forma pauperis, filed a four-count complaint in this court against Rispoli, DHHS Commissioner Lori Shibinette, and DCYF Director Joseph Ribsam. Count I alleged that all three defendants violated his federal statutory and constitutional rights by (1) forging a document that deprived McMenamon of his federal benefits, (2) failing to provide McMenamon with notice and opportunity to be heard prior to the termination of his federal benefits, and (3) depriving McMenamon of his right to appeal adverse agency decisions. Doc. 7 at 10. Count II alleged that all three defendants violated his federal constitutional rights by (1) failing to enforce child protection laws and (2) retaliating against him for reporting child abuse. Id. at 10-11. Finally, Counts III and IV alleged that Rispoli was liable for intentional and negligent infliction of emotional distress resulting from her alleged abuse of their children. Id. at 11. McMenamon sought damages on all counts, and injunctive relief on Count II. Id.[1]

Ribsam and Shibinette responded to the complaint with a motion to dismiss. I granted the motion in part by dismissing his damage claims against them but leaving his claim for injunctive relief in Count II intact.

---

[1] On preliminary review, I dismissed McMenamon's claims for damages against the defendants in their official capacities, his claim for Medicaid Fraud in Count I, and the portion of Count II alleging that defendants failed to enforce child protection laws. Doc. 10; Doc. 7 at 19.

5

Rispoli did not join in the motion to dismiss. Accordingly, the claims that remain are federal law claims for damages against Rispoli in Counts I and II, a federal law claim for injunctive relief against all three defendants in Count II, and state law claims against Rispoli in Counts III and IV for intentional and negligent infliction of emotional distress.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016). In this context, a "material fact" is one that has the "potential to affect the outcome of the suit." Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (quoting Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). A "genuine dispute" exists if a factfinder could resolve the disputed fact in the nonmovant's favor. Ellis v. Fid. Mgmt. Tr. Co., 883 F.3d 1, 7 (1st Cir. 2018).

The movant bears the initial burden of presenting evidence that "it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); accord Irobe v. U.S. Dep't of Agric., 890 F.3d 371, 377 (1st Cir. 2018). Once the movant has properly presented such evidence, the burden shifts to the nonmovant to designate "specific facts showing that there is a genuine issue for trial," Celotex, 477 U.S. at 324, and

6

to "demonstrate that a trier of fact could reasonably resolve that issue in [his] favor." Irobe, 890 F.3d at 377 (quoting Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010)). If the nonmovant fails to adduce such evidence on which a reasonable factfinder could base a favorable verdict, the motion must be granted. Celotex, 477 U.S. at 324. In considering the evidence, the court must draw all reasonable inferences in the nonmoving party's favor. Theriault v. Genesis HealthCare LLC, 890 F.3d 342, 348 (1st Cir. 2018).

### III.  ANALYSIS

Rispoli seeks summary judgment on McMenamon's federal and state law claims for damages and all three defendants challenge his claim for injunctive relief. Because these claims employ somewhat different standards, I address each type of claim separately. I begin with McMenamon's federal law claims for damages and then turn to his claim for injunctive relief. After disposing of his federal law claims, I conclude by addressing his state law claims.[2]

---

[2]    McMenamon also submitted a "Motion for Good Cause Based Upon Exceptional Events and Late Acquired Information" through which he seeks additional discovery and the opportunity to name additional defendants past the relevant deadlines. Doc. 43 at 3. Pursuant to Rule 6(b) of the Federal Rules of Civil Procedure, a court may extend past deadlines only if there is good cause and the moving party establishes that it failed to act in a timely manner "because of excusable neglect." See Fed. R. Civ. P. 6(b); see also Rivera-Almodovar v. Instituto Socioeconomico Comunitario, Inc., 730 F.3d 23,

A.    **Claims for Damages Under Federal Law**

Counts I and II seek damages from Rispoli. Count I centers on the termination of McMenamon's federal benefits and subsequent appeal, whereas Count II alleges that Rispoli retaliated against him for reporting child abuse.

Although these claims are based on different legal theories, each must satisfy the fundamental requirements of a Section 1983 claim. "Section 1983 provides a private right of action against state actors—that is, public officials acting under color of state law—who deprive individuals of rights confirmed by federal constitutional or statutory law." Camilo-Robles v. Zapata, 175 F.3d 41, 43 (1st Cir. 1999). "Section 1983 requires three elements for liability: deprivation of a right, a causal connection between the actor and the deprivation, and state action." Sanchez v. Pereira-Castillo, 590 F.3d 31, 41

---

26 (1st Cir. 2013). McMenamon argues that an extension is warranted here because (1) the defendants waited too long to produce discovery and ultimately only provided him with electronic discovery and (2) a DHHS employee that he spoke to about his benefits was recently murdered. Neither of these reasons demonstrate excusable neglect. McMenamon acknowledges that he was ultimately served with discovery well before the deadline, and fails to explain how the provision of electronic, rather than paper, discovery impeded his ability to meet the relevant deadlines. Moreover, McMenamon knew of his interactions with the deceased DHHS employee prior to the discovery deadline, and therefore could have submitted a timely request for discovery relating to her knowledge of the matter. The fact that the employee was subsequently murdered has no bearing on McMenamon's case, nor does it reveal any new or pertinent information. Accordingly, McMenamon's motion is denied.

(1st Cir. 2009). Satisfaction of the second element requires the plaintiff to prove "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization, between the actor and the underlying violation." Id. at 49 (quoting Carmilo-Robles, 175 F.3d at 44) (cleaned up). I evaluate each count separately using these standards.

1. Denial of Federal Benefits (Count I)

Count I alleges that Rispoli forged a document that caused McMenamon to lose his benefits, failed to provide him with notice and an opportunity to be heard before his benefits were terminated, and withdrew his appeal without his consent. Rispoli argues that McMenamon is not entitled to a trial on Count I because he cannot tie her to the alleged violation of his federally protected rights. I agree.

First, as to the allegations of forgery, McMenamon has failed to produce the altered version of the "custody/meals report" or provide any other evidence to support his assertion that Rispoli altered the document in question. McMenamon's "[c]onclusory allegations and unsupported speculation" that Rispoli may have altered the document "cannot defeat summary judgment." See López-López v. Robinson Sch., 958 F.3d 96, 109 (1st Cir. 2020).

McMenamon's claims that Rispoli terminated his benefits and subsequent appeal fare no better. Although it is undisputed that Rispoli's position at DHHS required her to adjudicate claims for certain benefits, there is no evidence that she took any action with regards to McMenamon's benefits or appeal. To the contrary, an audit of DHHS's internal case management system revealed that Rispoli never accessed, let alone took any action on, McMenamon's case file. Doc. 38-2 at 2.

McMenamon does not contest Rispoli's lack of direct access to his file, but rather asserts that she must have worked with another employee to manipulate McMenamon's benefits and appeal while evading detection. McMenamon comes to this conclusion based on an email he received from Rispoli stating that she was aware his benefits "claim [wa]s being investigated." Doc. 46-8 at 290. According to McMenamon, Rispoli could only have gained awareness of his claim and its subsequent investigation if she was involved in the matter. Doc. 39 at 3.

But the record reveals a far more innocuous explanation for Rispoli's statement. As noted above, McMenamon provided DHHS with a "custody/meals report" that showed he had primary custody of the two children. Doc. 46-8 at 131; Doc. 39-1 at 3-4. This assertion, if true, would warrant a reduction in Rispoli's own benefits. See Doc. 38-2 at 2. Rispoli testified that, pursuant to DHHS policy, she received a letter notifying her of

10

McMenamon's claim so that she could respond before changes were made to her benefits. Doc. 46-6 at 182-183. As McMenamon has not offered any evidence to counter this assertion, I accept Rispoli's explanation as true. See Statchen v. Palmer, 623 F.3d 15, 18 (1st Cir. 2010) ("the evidence from the moving party as to specific facts can be accepted by the court where no contrary evidence is tendered by the party opposing summary judgment.").

Because Rispoli learned of McMenamon's claim through her capacity as a private beneficiary, there is no reason to conclude that Rispoli's knowledge of McMenamon's claim indicates that she participated in any way in the conduct on which the claim is based. Absent any other evidence of Rispoli's involvement, McMenamon cannot demonstrate the required link between Rispoli and the alleged violation. Accordingly, Rispoli is entitled to summary judgment on Count I.

   2.   First Amendment Retaliation (Count II)

In Count II, McMenamon asserts that Rispoli retaliated against him for reporting child abuse in violation of his rights under the First Amendment.[3] To support this claim, McMenamon asserts that (1) DHHS fraud investigator

---

[3] In his objection to the defendants' motion for summary judgment, McMenamon asserts that the defendants are liable for "an intentional 'failure to protect' his children and others" from child abuse and references evidence that purports to prove as much. Doc. 39 at 5. Because the portion of Count II to which these arguments pertain was dismissed at the preliminary review stage, I do not address McMenamon's assertions or his proffered evidence.

11

Vinovich threatened him by stating, "You better change your attitude," Doc. 46-5 at 83, and (2) two Gilmanton police officers threatened him by stating "in an aggressive tone" that DCYF would come to his house in the morning, Doc. 46-6 at 6.[4]

As I have explained, a plaintiff in a Section 1983 action must prove "a causal connection between the actor and the [alleged] deprivation" of rights. Sanchez, 590 F.3d at 41. McMenamon does not even assert that Rispoli played any role in the alleged threats, let alone offer evidence to support such a claim. Accordingly, Rispoli is entitled to summary judgment on McMenamon's claim for damages in Count II.[5]

## B.  Claim for Injunctive Relief Under Federal Law

McMenamon also seeks injunctive relief in Count II to prevent future acts of retaliation. Although not raised by the parties, I conclude that McMenamon lacks standing to pursue injunctive relief. See Pagan v.

---

[4]  While McMenamon alleges other purported threats in his unverified complaint, he does not produce evidence of any such threats. Because such unsupported allegations cannot present a genuine dispute of material fact, I do not consider them in ruling on the defendants' motion for summary judgment. See Goguen v. Allen, 780 F.3d 437, 457 n.58 (1st Cir. 2015).

[5]  To the extent McMenamon asserts that Rispoli retaliated against him for exercising his First Amendment rights by terminating his benefits or subsequent appeal, such a claim cannot survive in light of my conclusion that McMenamon has not offered sufficient evidence that Rispoli was involved in his benefits claim.

Calderon, 448 F.3d 16, 26 (1st Cir. 2006) ("A federal court must satisfy itself as to its jurisdiction, including a plaintiff's Article III standing to sue, before addressing his particular claims, regardless of whether the litigants have raised the issue of standing.").

"Article III standing presents a question of justiciability; if it is lacking, a federal court has no subject matter jurisdiction over the claim." See Katz v. Pershing, LLC, 672 F.3d 64, 75 (1st Cir. 2012). A plaintiff bears the burden of "establish[ing] standing for each claim and for each form of relief sought." See Donahue v. City of Boston, 304 F.3d 110, 116 (1st Cir. 2002). In order to demonstrate standing to pursue injunctive relief, a plaintiff must "establish a real and immediate threat resulting in a sufficient likelihood that [he] will again be wronged in a similar way." Gray v. Cummings, 917 F.3d 1, 19 (1st Cir. 2019) (quoting Am. Postal Workers Union v. Frank, 968 F.2d 1373, 1376 (1st Cir. 1992)) (cleaned up). This burden is not satisfied by proof that a plaintiff "has been injured by an unlawful practice" in the past or that he "'could be' subjected [to a similar injury] in the future[.]" Steir v. Girl Scouts of the U.S.A., 383 F.3d 7, 16 (1st Cir. 2004). Rather, a plaintiff must show that "the prospect of harm [has] an 'immediacy and reality.'" Id. (quoting Golden v. Zwickler, 394 U.S. 103, 109 (1969)). This is frequently shown through evidence that "the defendant had, at the time of the injury, a written policy, and that the injury stems from that policy" or that "the harm is part of

a pattern of officially sanctioned behavior, violative of the plaintiffs' federal rights." See Nordstrom v. Ryan, 762 F.3d 903, 911 (9th Cir. 2014) (quoting Armstrong v. Davis, 275 F.3d 849, 861 (9th Cir. 2001)) (cleaned up).

McMenamon has not identified sufficient evidence to support a claim that he is likely to face retaliation in the future. The retaliation he complains of occurred over two years ago and has not recurred, despite the fact that McMenamon has continued to file reports of abuse. Moreover, there is no evidence in the record that any of the defendants knew of, let alone officially sanctioned, the earlier threats. At most, the evidence indicates "a relatively few instances of violations by individual [state actors], without any showing of a deliberate policy on behalf of the named defendants." See City of Los Angeles v. Lyons, 461 U.S. 95, 104 (1983). Such a showing is insufficient to confer standing to seek injunctive relief. Id. Accordingly, I lack jurisdiction to consider McMenamon's claim for injunctive relief.

**C.    State Law Claims**

McMenamon also asserts state tort law claims against Rispoli for intentional and negligent infliction of emotional distress based on her alleged abuse of their children. My jurisdiction to consider those claims rests on 28 U.S.C. § 1367, which confers supplemental jurisdiction over state law claims that relate to federal law claims. Generally, "[w]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims

14

remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." Borrás-Borrero v. Corporación del Fondo del Seguro del Estado, 958 F.3d 26, 37 (1st Cir. 2020) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). Because all of McMenamon's federal claims have been dismissed, I decline to exercise supplemental jurisdiction over his state law claims. Accordingly, Counts III and IV are dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, McMenamon's motion for good cause (Doc. 43) is denied. Defendants' motion for summary judgment as to the federal claims (Doc. 38) is granted, and Rispoli's motion for summary judgment as to the state law claims (Doc. 46) is denied as moot. Summary judgment is granted in favor of the defendants as to Counts I and II, whereas Counts III and IV are dismissed without prejudice. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

December 5, 2022

cc:  Richard A. McMenamon II, pro se
     Counsel of record

15